sxb

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION



FILED

DEC 2 0 2019

Judge Thomas M. Durkin
United States District Court

| | |
|---|---|
| UNITED STATES OF AMERICA | No. 19 CR 275 |
| v. | Judge Thomas M. Durkin |
| WEIYUN HUANG,<br>also known as "Kelly Huang" | |

## PLEA AGREEMENT

1.     This Plea Agreement between the United States Attorney for the Northern District of Illinois, JOHN R. LAUSCH, JR., and defendant WEIYUN HUANG, also known as "Kelly Huang," and her attorney, MATTHEW J. MADDEN, is made pursuant to Rule 11 of the Federal Rules of Criminal Procedure and is governed in part by Rule 11(c)(1)(A), as more fully set forth below. The parties to this Agreement have agreed upon the following:

## Charges in This Case

2.     The indictment in this case charges defendant with conspiracy to commit visa fraud, in violation of Title 18, United States Code, Section 371 (Count 1), and visa fraud, in violation of Title 18, United States Code, Section 1546(a) (Counts 2-6).

3.     Defendant has read the charges against her contained in the indictment, and those charges have been fully explained to her by her attorney.

4.     Defendant fully understands the nature and elements of the crimes with which she has been charged.

## Charge to Which Defendant Is Pleading Guilty

5.     By this Plea Agreement, defendant agrees to enter a voluntary plea of guilty to the following count of the indictment: Count One, which charges defendant with conspiracy to commit visa fraud, in violation of Title 18, United States Code, Section 371. In addition, as further provided below, defendant agrees to the entry of a forfeiture judgment.

## Factual Basis

6.     Defendant will plead guilty because she is in fact guilty of the charge contained in Count One of the indictment. In pleading guilty, defendant admits the following facts and that those facts establish her guilt beyond a reasonable doubt and constitute relevant conduct pursuant to Guideline § 1B1.3, and establish a basis for forfeiture of the property described elsewhere in this Plea Agreement:

Beginning no later than on or about September 6, 2013, and continuing until on or about April 1, 2019, at Chicago, in the Northern District of Illinois, and elsewhere, defendant WEIYUN HUANG, also known as "Kelly Huang," and co-defendants Findream, LLC and Sinocontech, LLC, conspired with Individuals XQ, LT, YG, JC, JL, and SZ, and others known and unknown to knowingly subscribe as true under penalty of perjury under 28 U.S.C. § 1746 a false statement with respect to a material fact in documents required by the immigration laws and regulations prescribed thereunder, namely, nonimmigrant H-1B visas and Optional Practical Training extensions on nonimmigrant F-1 student visas, that is, Forms I-20, I-129,

and I-983, stating that the students were employed by FINDREAM, LLC and SINOCONTECH, LLC, which statements the defendants then knew were false, in that the students were not employed by FINDREAM, LLC or SINOCONTECH, LLC, in violation of Title 18, United States Code, Section 1546(a).

More specifically, defendant, a citizen and resident of the People's Republic of China, created Findream, LLC and Sinocontech, LLC by incorporating Findream in the State of California on August 30, 2013, and Sinocontech in the State of Delaware on December 12, 2016. Defendant knew that the purpose of Findream and Sinocontech during the relevant time period was to provide fraudulent Optional Practical Training ("OPT") employment for F-1 student visa-holders, and H-1B employment visas for foreign nationals, in the United States.

Defendant understood that F-1 visa holders were issued a Form I-20 "Certificate of Eligibility for Nonimmigrant Student Status – For Academic and Language Students" by United States Immigration and Customs Enforcement ("ICE"). Defendant also understood that F-1 visa holders could extend their stay by participating in the OPT program, which permitted F-1 visa holders to obtain temporary employment directly related to their major area of study and extend the visa for one year. She also understood that F-1 visa holders with a science, technology, engineering, or mathematics ("STEM") degree could extend their participation in the OPT program for an additional 2 years. Defendant knew that a F-1 visa holder was required to submit a Form I-983 Training Plan for STEM OPT Students in order to

apply for and provide updates on the STEM OPT extension. Defendant also knew that an H-1B visa permitted United States-based employers to temporarily employ foreign national workers in specialty occupations, which required specialized knowledge and a bachelor's degree or the equivalent of work experience.

Defendant advertised fraudulent visa-related employment with Findream on websites. Defendant communicated with customers via email and WeChat IDs she controlled. Defendant did not advertise Sinocontech on the websites, but offered employment at Sinocontech, rather than Findream, to some of her customers.

Defendant intermittently hired legitimate employees in the United States and China in order to handle software development and maintenance of the Findream-associated websites and WeChat official account. For example, defendant hired Individual XQ in 2014 to handle portions of the software development of the Findream website and later manage the content of the WeChat platform. Defendant knew that Individual XQ understood that in exchange for a fee, Findream permitted F-1 visa holders to list Findream as their OPT employer, despite not actually working at Findream because Individual XQ was originally a Findream customer. Before Individual XQ was hired by defendant to legitimately work for Findream, Individual XQ was a F-1 visa holder, who paid defendant $200 for a false Findream offer letter in order to list Findream on her Form I-20 after she graduated from a university in the United States. In reality, defendant caused the false offer letter to be created for a fee to assist Individual XQ defraud the United States Citizenship and Immigration

4

Service ("USCIS"). Defendant understood that if USCIS knew the offer letter was false, USCIS would not have approved an extension of stay under the OPT program for Individual XQ.

With respect to the OPT program, defendant agreed with OPT customers, including Chicago residents Individuals LT, JC, YG, and SZ, to provide false documents that purported to evidence employment at Findream or Sinocontech in order to permit the customers to fraudulently extend their F-1 student visas via the OPT program. Defendant provided each of the OPT customers with a range of services in furtherance of the fraud, including offer letters, verifications of employment letters, Form I-983 OPT Training Plans, payroll, and Form 1099-MISC tax forms, that purported to show that these customers worked for Findream or Sinocontech, when defendant and the customers knew none of the OPT customers worked at Findream or Sinocontech.

For the customers who required a Form I-983 OPT Training Plan for their STEM OPT, defendant filled out the forms with false information concerning the customers' purported work at Findream or Sinocontech, and signed the forms on behalf of Findream or Sinocontech under penalty of perjury. Defendant understood that if USCIS knew the employment information in the Form I-983 OPT Training Plans was false, USCIS would not have approved an extension of stay under the OPT program for the Findream or Sinocontech customers.

For the customers who sought proof of payroll, defendant and the customers agreed that the customer had to provide the payroll funds to defendant, and defendant then caused direct deposits from Findream's bank accounts to be deposited in the customers' bank accounts which falsely purported to be payroll payments. Defendant charged the customers a percentage of the payroll payments as the fee for this service.

Defendant knew that as a result of purchasing these fraudulent OPT services from defendant, the OPT customers fraudulently reported Findream or Sinocontech as their employer in their Forms I-20 and to their Chicago-based universities in order to extend their F-1 student visas. In exchange, the customers paid defendant the relevant fees.

From September 6, 2013 through April 1, 2019, defendant falsely and fraudulently represented that at least approximately 2,025 F-1 visa holders in the United States were employed by Findream for their OPT extension, when she knew that the visa holders were not employed at Findream. From December 12, 2016 through April 1, 2019, defendant falsely and fraudulent represented that at least approximately 660 F-1 visa holders in the United States were employed at Sinocontech for their OPT extension, when she knew that the F-1 visa holders were not employed at Sinocontech.

With respect to the Findream H-1B program, defendant agreed with Findream H-1B customers, including Chicago resident Individual JL, to provide the H-1B

6

customers a Findream offer letter and to submit false Form I-129 Petitions seeking H-1B visas for the H-1B customers, knowing that they did not work for Findream. The Form I-129 Petitions were signed under penalty of perjury by defendant as the CEO of Findream. Defendant understood that if USCIS knew that the employment information was false, USCIS would not have approved an extension of stay under the H-1B program for the Findream customers. In exchange, each H-1B customer paid defendant and Findream over approximately $9,000 in exchange for this service. From April 1, 2017 through April 1, 2019, defendant applied for nonimmigrant H-1B visas in the United States for at least approximately 8 customers by falsely and fraudulently claiming those customers were employed at Findream, when she knew that the H-1B visa applicants were not employed at Findream.

In order to conceal her fraud, among other things, defendant used fake names of purported Findream employees on correspondence with customers, offer letters, verifications of employment, and Forms I-983; and listed addresses for Findream or Sinocontech in Mountain View California, New York, New York, and Chicago, Illinois, among other cities, at which locations defendant knew neither Findream or Sinocontech had a physical presence.

Customers paid defendant and Findream for OPT or H-1B visa-fraud services in United States Dollars via peer-to-peer payment systems such as PayPal, Venmo, Chase Quickpay, and Zelle, or in Chinese Renminbi via China-based payment

platforms associated with WeChat. More specifically, defendant received payments for the visa-fraud services in United States Dollars to the following accounts:

| Financial Institution | Account Number | Account Name / Title | Signer(s) / User(s) |
|---|---|---|---|
| Bank of America | 444012351413 | Weiyun HUANG | Weiyun HUANG |
| JPMorgan Chase Bank | 259855583 | Findream LLC | Weiyun HUANG |
| JPMorgan Chase Bank | 259857961 | Weiyun HUANG | Weiyun HUANG |
| JPMorgan Chase Bank | 3392559133 | Weiyun HUANG | Weiyun HUANG |
| PayPal | 2170305296135344643 | Findream LLC | Weiyun HUANG |
| PayPal | 1381647367236281464 | Something Cool | Weiyun HUANG |
| Venmo | 14876089 | Dr Pig / @drpigpigpig | optguakaoca@gmail.com info@findreamllc.com kelly0710@gmail.com |

From September 6, 2013 through April 1, 2019, defendant, Findream, and Sinocontech received at least approximately $1.5 million from their customers in exchange for falsely certifying that those customers were employed by Findream or Sinocontech in documents required by the immigration laws and regulations, including the Form I-20, the Form I-983, and the Form I-129. During this time period, defendant, Findream, and Sinocontech received a profit or gain of at least approximately $800,000.

## Maximum Statutory Penalties

7.     Defendant understands that the charge to which she is pleading guilty carries the following statutory penalties:

a.     A maximum sentence of 5 years of imprisonment. This offense also carries a maximum fine of $250,000. Defendant further understands that the judge also may impose a term of supervised release of not more than three years.

b.     Pursuant to Title 18, United States Code, Section 3013, defendant will be assessed $100 on the charge to which she has pled guilty, in addition to any other penalty imposed.

## Sentencing Guidelines Calculations

8.     Defendant understands that in determining a sentence, the Court is obligated to calculate the applicable Sentencing Guidelines range, and to consider that range, possible departures under the Sentencing Guidelines, and other sentencing factors under 18 U.S.C. § 3553(a), which include: (i) the nature and circumstances of the offense and the history and characteristics of the defendant; (ii) the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense, afford adequate deterrence to criminal conduct, protect the public from further crimes of the defendant, and provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; (iii) the kinds of sentences available; (iv) the need to avoid unwarranted sentence disparities

9

among defendants with similar records who have been found guilty of similar conduct; and (v) the need to provide restitution to any victim of the offense.

9.      For purposes of calculating the Sentencing Guidelines, the parties agree on the following points:

a.      **Applicable Guidelines**. The Sentencing Guidelines to be considered in this case are those in effect at the time of sentencing. The following statements regarding the calculation of the Sentencing Guidelines are based on the Guidelines Manual currently in effect, namely the November 2018 Guidelines Manual.

b.      **Offense Level Calculations**.

i.      The base offense level is 11, pursuant to Guidelines §§ 2L2.1(a) 2X1.1.

ii.      Pursuant to Guideline § 2L2.1(b)(2)(C), the offense level is increased by 9 levels because HUANG's offense conduct involved approximately 2,693 OPT or H1-B documents related to the immigration status of others, which is over 100 documents.

iii.      It is the government's position that, pursuant to Guideline § 3B1.1(a), the offense level is increased by 4 levels because defendant was an organizer and leader of criminal activity that involved five or more participants and was otherwise extensive. Defendant admits the above facts, but wishes to reserve the right to make the legal argument that the an adjustment under § 3B1.1(a) is not

10

warranted. Each party is free to present argument and evidence to the Court on this issue.

iv.     Defendant has clearly demonstrated a recognition and affirmative acceptance of personal responsibility for her criminal conduct. If the government does not receive additional evidence in conflict with this provision, and if defendant continues to accept responsibility for her actions within the meaning of Guideline § 3E1.1(a), including by furnishing the United States Attorney's Office and the Probation Office with all requested financial information relevant to her ability to satisfy any fine that may be imposed in this case, a two-level reduction in the offense level is appropriate.

v.      In accord with Guideline § 3E1.1(b), defendant has timely notified the government of her intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the Court to allocate its resources efficiently. Therefore, as provided by Guideline § 3E1.1(b), if the Court determines the offense level to be 16 or greater prior to determining that defendant is entitled to a two-level reduction for acceptance of responsibility, the government will move for an additional one-level reduction in the offense level.

c.      **Criminal History Category**. With regard to determining defendant's criminal history points and criminal history category, based on the facts now known to the government, defendant's criminal history points equal zero and defendant's criminal history category is I.

11

d. **Anticipated Advisory Sentencing Guidelines Range**. Therefore, based on the facts now known to the government, the anticipated offense level is 21, which, when combined with the anticipated criminal history category of I, results in an anticipated advisory sentencing guidelines range of 37 to 46 months of imprisonment, in addition to any supervised release and fine the Court may impose.

e. Defendant and her attorney and the government acknowledge that the above guidelines calculations are preliminary in nature, and are non-binding predictions upon which neither party is entitled to rely. Defendant understands that further review of the facts or applicable legal principles may lead the government to conclude that different or additional guidelines provisions apply in this case. Defendant understands that the Probation Office will conduct its own investigation and that the Court ultimately determines the facts and law relevant to sentencing, and that the Court's determinations govern the final guideline calculation. Accordingly, the validity of this Agreement is not contingent upon the probation officer's or the Court's concurrence with the above calculations, and defendant shall not have a right to withdraw her plea on the basis of the Court's rejection of these calculations.

10. Both parties expressly acknowledge that this Agreement is not governed by Fed. R. Crim. P. 11(c)(1)(B), and that errors in applying or interpreting any of the sentencing guidelines may be corrected by either party prior to sentencing. The parties may correct these errors either by stipulation or by a statement to the

Probation Office or the Court, setting forth the disagreement regarding the applicable provisions of the guidelines. The validity of this Agreement will not be affected by such corrections, and defendant shall not have a right to withdraw her plea, nor the government the right to vacate this Agreement, on the basis of such corrections.

### Agreements Relating to Sentencing

11.     Each party is free to recommend whatever sentence it deems appropriate.

12.     It is understood by the parties that the sentencing judge is neither a party to nor bound by this Agreement and may impose a sentence up to the maximum penalties as set forth above. Defendant further acknowledges that if the Court does not accept the sentencing recommendation of the parties, defendant will have no right to withdraw her guilty plea.

13.     Defendant agrees to pay the special assessment of $100 at the time of sentencing with a cashier's check or money order payable to the Clerk of the U.S. District Court.

14.     After sentence has been imposed on the count to which defendant pleads guilty as agreed herein, the government will move to dismiss the remaining counts of the indictment as to defendant.

### Forfeiture

15.     Defendant understands that by pleading guilty, she will subject to forfeiture to the United States all right, title, and interest that she has in any

property constituting or derived from proceeds obtained, directly or indirectly, as a result of the offense.

16.    Defendant agrees to forfeiture of the following specific property to the United States: All funds currently held within the following accounts:

| Financial Institution | Account Number | Account Name / Title | Signer(s) / User(s) |
|---|---|---|---|
| Bank of America | 444012351413 | Weiyun HUANG | Weiyun HUANG |
| JPMorgan Chase Bank | 259855583 | Findream LLC | Weiyun HUANG |
| JPMorgan Chase Bank | 259857961 | Weiyun HUANG | Weiyun HUANG |
| JPMorgan Chase Bank | 3392559133 | Weiyun HUANG | Weiyun HUANG |
| PayPal | 2170305296135344643 | Findream LLC | Weiyun HUANG |
| PayPal | 1381647367236281464 | Something Cool | Weiyun HUANG |
| Venmo | 14876089 | Dr Pig / @drpigpigpig | optguakaoca@gmail.com info@findreamllc.com kelly0710@gmail.com |

In doing so, defendant admits that the property described above represents proceeds defendant obtained as a result of the offense, as alleged in the indictment.

17.    Defendant agrees to the entry of a personal money judgment in the amount of $1.5 million, which represents the total amount of proceeds traceable to the offense. Defendant consents to the immediate entry of a preliminary order of

forfeiture setting forth the amount of the personal money judgment she will be ordered to pay.

18.     Defendant admits that because the directly forfeitable property, other than the funds contained in the accounts listed above, is no longer available for forfeiture as described in Title 21, United States Code, Section 853(p)(1), the United States is entitled to seek forfeiture of any other property of defendant, up to the value of the personal money judgment, as substitute assets pursuant to Title 21, United States Code, Section 853(p)(2).

19.     Defendant understands that forfeiture shall not be treated as satisfaction of any fine, cost of imprisonment, or any other penalty the Court may impose upon defendant in addition to the forfeiture judgment.

20.     Defendant agrees to waive all constitutional, statutory, and equitable challenges in any manner, including but not limited to direct appeal or a motion brought under Title 28, United States Code, Section 2255, to any forfeiture carried out in accordance with this agreement on any grounds, including that the forfeiture constitutes an excessive fine or punishment. The waiver in this paragraph does not apply to a claim of involuntariness or ineffective assistance of counsel.

## Acknowledgments and Waivers Regarding Plea of Guilty

### Nature of Agreement

21.     This Agreement is entirely voluntary and represents the entire agreement between the United States Attorney and defendant regarding defendant's criminal liability in case 19 CR 275.

22.     This Agreement concerns criminal liability only. Except as expressly set forth in this Agreement, nothing herein shall constitute a limitation, waiver, or release by the United States or any of its agencies of any administrative or judicial civil claim, demand, or cause of action it may have against defendant or any other person or entity. The obligations of this Agreement are limited to the United States Attorney's Office for the Northern District of Illinois and cannot bind any other federal, state, or local prosecuting, administrative, or regulatory authorities, except as expressly set forth in this Agreement.

### Waiver of Rights

23.     Defendant understands that by pleading guilty she surrenders certain rights, including the following:

a.      **Trial rights**. Defendant has the right to persist in a plea of not guilty to the charges against her, and if she does, she would have the right to a public and speedy trial.

i.      The trial could be either a jury trial or a trial by the judge sitting without a jury. However, in order that the trial be conducted by the judge

16

sitting without a jury, defendant, the government, and the judge all must agree that the trial be conducted by the judge without a jury.

        ii.      If the trial is a jury trial, the jury would be composed of twelve citizens from the district, selected at random. Defendant and her attorney would participate in choosing the jury by requesting that the Court remove prospective jurors for cause where actual bias or other disqualification is shown, or by removing prospective jurors without cause by exercising peremptory challenges.

        iii.     If the trial is a jury trial, the jury would be instructed that defendant is presumed innocent, that the government has the burden of proving defendant guilty beyond a reasonable doubt, and that the jury could not convict her unless, after hearing all the evidence, it was persuaded of her guilt beyond a reasonable doubt and that it was to consider each count of the indictment separately. The jury would have to agree unanimously as to each count before it could return a verdict of guilty or not guilty as to that count.

        iv.     If the trial is held by the judge without a jury, the judge would find the facts and determine, after hearing all the evidence, and considering each count separately, whether or not the judge was persuaded that the government had established defendant's guilt beyond a reasonable doubt.

        v.      At a trial, whether by a jury or a judge, the government would be required to present its witnesses and other evidence against defendant.

Defendant would be able to confront those government witnesses and her attorney would be able to cross-examine them.

vi. At a trial, defendant could present witnesses and other evidence in her own behalf. If the witnesses for defendant would not appear voluntarily, she could require their attendance through the subpoena power of the Court. A defendant is not required to present any evidence.

vii. At a trial, defendant would have a privilege against self-incrimination so that she could decline to testify, and no inference of guilt could be drawn from her refusal to testify. If defendant desired to do so, she could testify in her own behalf.

b. **Appellate rights.** Defendant further understands she is waiving all appellate issues that might have been available if she had exercised her right to trial, and may only appeal the validity of this plea of guilty and the sentence imposed. Defendant understands that any appeal must be filed within 14 calendar days of the entry of the judgment of conviction.

24. Defendant understands that by pleading guilty she is waiving all the rights set forth in the prior paragraphs, with the exception of the appellate rights specifically preserved above. Defendant's attorney has explained those rights to her, and the consequences of her waiver of those rights.

**Presentence Investigation Report/Post-Sentence Supervision**

25.    Defendant understands that the United States Attorney's Office in its submission to the Probation Office as part of the Pre-Sentence Report and at sentencing shall fully apprise the District Court and the Probation Office of the nature, scope, and extent of defendant's conduct regarding the charges against her, and related matters. The government will make known all matters in aggravation and mitigation relevant to sentencing.

26.    Defendant agrees to truthfully and completely execute a Financial Statement (with supporting documentation) prior to sentencing, to be provided to and shared among the Court, the Probation Office, and the United States Attorney's Office regarding all details of her financial circumstances, including her recent income tax returns as specified by the probation officer. Defendant understands that providing false or incomplete information, or refusing to provide this information, may be used as a basis for denial of a reduction for acceptance of responsibility pursuant to Guideline § 3E1.1 and enhancement of her sentence for obstruction of justice under Guideline § 3C1.1, and may be prosecuted as a violation of Title 18, United States Code, Section 1001 or as a contempt of the Court.

27.    For the purpose of monitoring defendant's compliance with her obligations to pay a fine during any term of supervised release or probation to which defendant is sentenced, defendant further consents to the disclosure by the IRS to the Probation Office and the United States Attorney's Office of defendant's individual

income tax returns (together with extensions, correspondence, and other tax information) filed subsequent to defendant's sentencing, to and including the final year of any period of supervised release or probation to which defendant is sentenced. Defendant also agrees that a certified copy of this Agreement shall be sufficient evidence of defendant's request to the IRS to disclose the returns and return information, as provided for in Title 26, United States Code, Section 6103(b).

### Other Terms

28.     Defendant agrees to cooperate with the United States Attorney's Office in collecting any unpaid fine for which defendant is liable, including providing financial statements and supporting records as requested by the United States Attorney's Office.

29.     Defendant recognizes that pleading guilty may have consequences with respect to her immigration status if she is not a citizen of the United States. Under federal law, a broad range of crimes are removable offenses, including the offense to which defendant is pleading guilty. Indeed, because defendant is pleading guilty to an offense that is an "aggravated felony" as that term is defined in Title 8, United States Code, Section 1101(a)(43), removal is presumptively mandatory. Removal and other immigration consequences are the subject of a separate proceeding, however, and defendant understands that no one, including her attorney or the Court, can predict to a certainty the effect of her conviction on her immigration status. Defendant nevertheless affirms that she wants to plead guilty regardless of any

immigration consequences that her guilty plea may entail, even if the consequence is her automatic removal from the United States.

## Conclusion

30.     Defendant understands that this Agreement will be filed with the Court, will become a matter of public record, and may be disclosed to any person.

31.     Defendant understands that her compliance with each part of this Agreement extends throughout the period of her sentence, and failure to abide by any term of the Agreement is a violation of the Agreement. Defendant further understands that in the event she violates this Agreement, the government, at its option, may move to vacate the Agreement, rendering it null and void, and thereafter prosecute defendant not subject to any of the limits set forth in this Agreement, or may move to resentence defendant or require defendant's specific performance of this Agreement. Defendant understands and agrees that in the event that the Court permits defendant to withdraw from this Agreement, or defendant breaches any of its terms and the government elects to void the Agreement and prosecute defendant, any prosecutions that are not time-barred by the applicable statute of limitations on the date of the signing of this Agreement may be commenced against defendant in accordance with this paragraph, notwithstanding the expiration of the statute of limitations between the signing of this Agreement and the commencement of such prosecutions.

21

32.    Should the judge refuse to accept defendant's plea of guilty, this Agreement shall become null and void and neither party will be bound to it.

33.    Defendant and her attorney acknowledge that no threats, promises, or representations have been made, nor agreements reached, other than those set forth in this Agreement, to cause defendant to plead guilty.

34.    Defendant acknowledges that she has read this Agreement and carefully reviewed each provision with her attorney. Defendant further acknowledges that she understands and voluntarily accepts each and every term and condition of this Agreement.

AGREED THIS DATE:    12/20/19

JOHN R. LAUSCH, JR.
United States Attorney

WEIYUN HUANG
Defendant

SHOBA PILLAY
Assistant U.S. Attorney

MATTHEW J. MADDEN
Attorney for Defendant

22